IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BERKLEY INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:17-CV-01836-B |
| | § | |
| NEXT HEALTH LLC, UNITED | § | |
| TOXICOLOGY LLC, MEDICUS | § | |
| LABORATORIES LLC, US | § | |
| TOXICOLOGY LLC, AMERICAN | § | |
| LABORATORIES GROUP LLC, | § | |
| | § | |
| Defendants. | § | |

**<u>BERKLEY INSURANCE COMPANY'S BRIEF IN SUPPORT OF RESPONSE TO
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND REPLY IN
SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   SUMMARY JUDGMENT EVIDENCE ...........................................................1

III.  ARGUMENTS AND AUTHORITIES.............................................................1

    A.    The Insureds Ignore the Policy Language ................................................1

    B.    The Insureds' Interpretation of the Related Claims Condition Is
           Unreasonable........................................................................................5

    C.    The Insureds Ignore the Factual Allegations ..........................................7

    D.    Texas Law Supports Berkley's Position .................................................10

    E.    The Lawsuits are the Same Claim ..........................................................14

IV.   CONCLUSION.................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adi WorldLink, LLC v. RSUI Indemnity Co.*,
    No. 4:16-CV-665, 2017 WL 4112112 (E.D. Tex. Sept. 18, 2017)..........................................11

*Admiral Insurance Co. v. Briggs*,
    264 F. Supp. 2d 460 (N.D. Tex. 2003) .................................................................................12

*Am. Mfrs. Mut. Ins. Co. v. Schaefer*,
    124 S.W.3d 154 (Tex. 2003)...................................................................................................5

*American Automobile Insurance Co. v. Grimes*,
    No. CIV.A.5:02-CV-066-C, 2004 WL 246989 (N.D. Tex. Feb. 10, 2004)............................13

*Balandran v. Safeco Ins. co. of Am.*,
    972 S.W.2d 738 (Tex. 1998)...................................................................................................6

*Coker v. Coker*,
    650 S.W.2d 391 (Tex. 1983)...................................................................................................5

*Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*,
    940 S.W.2d 587 (Tex. 1996)...................................................................................................6

*Evanston Ins. Co. v. Lapolla Indus., Inc.*,
    93 F. Supp. 3d 606, 611 (S.D. Tex.), *aff'd*, 634 F. App'x 439 (5th Cir. 2015).........................4

*Evanston Ins. Co. v. Legacy of Life, Inc.*,
    370 S.W.3d 377 (Tex. 2012)...................................................................................................9

*Fed. Ins. Co. v. CMI Lloyds Ins. Co.*,
    No. 3:06-CV-0103-B, 2007 WL 9717213 (N.D. Tex. Mar. 9, 2007).......................................9

*Fiess v. State Farm Lloyds*,
    202 S.W.3d 744 (Tex. 2006)...................................................................................................5

*Forbau v. Aetna Life Ins. Co.*,
    876 S.W.2d 132 (Tex. 1994)...................................................................................................4

*Gilbert Tex. Constr. L.P. v. Underwriters at Lloyd's London*,
    327 S.W.3d 118 (Tex. 2010)...........................................................................................3, 4, 5

*Great American Insurance Co. v. Godwin Pappas Ronquillo, L.L.P.*,
    No. 3:07-CV-1727-N, 2009 WL 10678616 (N.D. Tex. Jan. 12, 2009)..................................13

*Harken Explor. Co. v. Sphere Drake Ins. PLC*,
 261 F.3d 466 (5th Cir. 2001) ................................................................................5

*JAW The Pointe, L.L.C. v. Lexington Ins. Co.*,
 460 S.W.3d 597 (Tex. 2015) ................................................................................4

*L'Atrium on the Creek I, L.P. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
 326 F. Supp. 2d 787 (N.D. Tex. 2004) ...............................................................10

*Lyons v. State Farm Lloyds & Nat'l Cas. Co.*,
 41 S.W.3d 201 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ......................6

*Puckett v. U.S. Fire Ins. Co.*,
 678 S.W.2d 936 (Tex. 1984) ................................................................................6

*Ranger Ins. Co. v. Bowie*,
 574 S.W.2d 540 (Tex. 1978) ................................................................................6

*Reeves Cty. v. Houston Cas. Co.*,
 356 S.W.3d 664 (Tex. App.—El Paso 2011, no pet.) ...........................................3

*RSUI Indem. Co. v. The Lynd Co.*,
 466 S.W.3d 113 (Tex. 2015) ............................................................................4, 5

*Sharp v. State Farm Fire & Cas. Ins. Co.*,
 115 F.3d 1258 (5th Cir. 1997) ............................................................................4

*Southwest Risk, L.P. v. Ironshore Specialty Insurance Co.*,
 188 F. Supp. 3d 621 (S.D. Tex. 2016) .................................................................10

*State Farm Fire & Cas. Co. v. Reed*,
 873 S.W.2d 698 (Tex. 1993) ................................................................................6

*Test Masters Educ. Servs., Inc. v. State Farm Lloyds*,
 791 F.3d 561 (5th Cir. 2015) ...............................................................................9

*TRI Core Inc. v. Northland Insurance Co.*,
 No. 3-01-CV-1431-BD, 2002 WL 31548754 (N.D. Tex. Nov. 12, 2002) .......11, 12

*U.S. Fid. & Guar. Co. v. Goudeau*,
 272 S.W.3d 603 (Tex. 2008) ................................................................................4

**Rules**

Federal Rule of Civil Procedure 56 ................................................................................1

Northern District Local Rules 7.1-7.2............................................................................1

Northern District Local Rules 56.1-56.7........................................................................1

Pursuant to Federal Rule of Civil Procedure 56 and Northern District Local Rules 7.1-7.2 and 56.1-56.7, Plaintiff Berkley Insurance Company ("Berkley") files this Brief in Response to Defendants' Motion for Partial Summary Judgment and Reply in Support of Berkley's Motion for Partial Summary Judgment and states as follows:

## I.    <u>INTRODUCTION</u>

1.    The Insureds attempt to support their claim that Berkley is obligated to provide a defense to them only by disregarding the language in the Policies and the factual allegations in both the United Healthcare Lawsuit and the Victory Lawsuit.  Once the Policies' language and the factual allegations are considered, it becomes apparent that the lawsuits must be deemed to be the same **Claim** because both sets of plaintiffs allege damages as a result of identical kickback schemes engaged in by the **Insureds**.

## II.    <u>SUMMARY JUDGMENT EVIDENCE</u>

2.    In support of its Response, Berkley incorporates by reference the exhibits attached to its Appendix in Support of Motion for Partial Summary Judgment ("Berkley App.").  *See* Dkt. 61.  Berkley further relies on the evidence attached to its Supplemental Appendix in Support of Response to Plaintiffs' Motion for Partial Summary Judgment.

## III.    <u>ARGUMENTS AND AUTHORITIES</u>

### A.    <u>The Insureds Ignore the Policy Language</u>

3.    In their Brief, the Insureds initially acknowledge the policy language at issue in this dispute:

VII.   Notice of Claim and Multiple Claims

       A.    Notice of Claim

As a condition precedent to their rights under this **Policy**, an **Insured** shall give the **Insurer** written notice of any **Claim** first made against the **Insureds** during the **Policy Period**, as soon as practicable after the **Insured Entity's** President, CEO, CFO, Chairman of the Board, or Human Resources representative or equivalent becomes aware of the **Claim**, but in no event later than 90 days after the expiration of the **Policy Period**.

\*\*\*

C.   Related Claims

All **Claims** based upon or arising out of the same **Wrongful Act** or any **Related Wrongful Acts**, or one or more series of any similar, repeated or continuous **Wrongful Acts** or **Related Wrongful Acts**, shall be considered a single **Claim**.  Each **Claim** shall be deemed to be first made at the earliest of the following times:

1.   when the earliest **Claim** arising out of such **Wrongful Act** or **Related Wrongful Acts** was first made…

Insured's Brief in Support at ¶ 4; Berkley App. at 36, 68, and 88.

4.   The Insureds also acknowledge that they failed to give Berkley written notice of the Victory Lawsuit[1] during the relevant policy period of February 19, 2015 to February 19, 2016, thereby breaching the Notice of Claim condition.  Insureds' Brief in Support at ¶ 7.  In order to argue that the Victory Lawsuit and the United Healthcare Lawsuit[2] are two separate **Claims,** and that Berkley therefore incorrectly denied coverage for the United Healthcare Lawsuit, the Insureds devote the remainder of their brief attempting to support their position that the two lawsuits do not allege **Related Wrongful Acts** because they do not involve "an acutely obvious legal or causal connection."   Insureds' Brief in Support at pp. 14-15.  That is not the standard for determining whether the Victory Lawsuit and the United Healthcare Lawsuit are deemed to be the same **Claim**, however.  Based on the policy language cited above, the lawsuits

---

[1]  "Victory Lawsuit" is defined as *L2 Surgical, LLC v. Victory Medical Center Craig Ranch, LP, et al*., Adversary No. 15-04078 in the United States Bankruptcy Court for the Northern District of Texas.
[2]  "United Healthcare Lawsuit" is defined as *United Healthcare Services Inc., et al. v. Next Health LLC, et al*., Case No. 3:17-cv-243 pending in the United States District Court for the Northern District of Texas.

are deemed to be the same **Claim** if they are based upon or arise out of one or more of a series of similar, repeated or continuous **Related Wrongful Acts**, which are defined as acts or omissions that are logically or causally connected *by reason of* any common fact, circumstance, situation, transaction, casualty, event or decision.  Berkley App. at 34 and 86 (emphasis added).

5.      When considering all of the language in the Related Claims condition, it becomes apparent that the scope of the condition is quite broad.  The Policies[3] do not require "an acutely obvious legal or causal connection."  Instead, the Policies merely require that the two lawsuits allege a series of similar acts or omissions that have any common fact, circumstance, situation, transaction, casualty, event or decision.  In that event, the acts or omissions are considered to be logically or causally connected.  The Insureds conveniently ignore this language because it substantially increases their burden of proving that the United Healthcare Lawsuit is a separate **Claim** that was first made and reported during the Policy's coverage period of February 19, 2016 to February 19, 2017.  *Gilbert Tex. Constr. L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010) (finding that it is well established that the insured bears the initial burden to show that its claim falls within the scope of coverage provided by the policy); *see also Reeves Cty. v. Houston Cas. Co.*, 356 S.W.3d 664, 670 (Tex. App.—El Paso 2011, no pet.) (holding that since the "interrelated acts" provision was not an exclusion but constituted "other conditions and agreements," the insured bore the initial burden to establish that a claim was first made during the policy period and not at an earlier time under the "interrelated acts" provision).

6.      The rules of contract interpretation prevent the Insureds from picking and choosing those portions of the policy language they wish to apply.  In determining a question of

---

[3] "Policies" include Executive Liability Policy No. 1376666 issued to Next Health LLC for the policy period February 19, 2015 to February 19, 2016 (the "Prior Policy") and Executive Liability Policy No. 1444872 issued to Next Health LLC for the policy period February 19, 2016 to February 19, 2017 (the "Policy").

insurance coverage, courts review "the language of the policy because [courts] presume parties intend what the words of their contract say." *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 602-03 (Tex. 2015). Insurance policies are interpreted under the rules of construction that apply to contracts generally. *Sharp v. State Farm Fire & Cas. Ins. Co.*, 115 F.3d 1258, 1260 (5th Cir. 1997) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)). A court begins its analysis with the language of the contract because it is the best representation of what the parties mutually intended. *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015); *Gilbert Tex. Constr., L.P.*, 327 S.W.3d at 126. Unless the policy dictates otherwise, the court is to give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage. *RSUI Indem. Co.*, 466 S.W.3d at 118; *U.S. Fid. & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 607 (Tex. 2008); *see Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). A court must read all parts of the insurance contract together, giving meaning to each sentence, clause, and word, to avoid making any portion inoperative. *Evanston Ins. Co. v. Lapolla Indus., Inc.*, 93 F. Supp. 3d 606, 611 (S.D. Tex.), *aff'd*, 634 F. App'x 439 (5th Cir. 2015); *see also RSUI Indem. Co.*, 466 S.W.3d at 118 ("The court must strive to give effect to all of the words and provisions so that none is rendered meaningless.") "No one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Forbau*, 876 S.W.2d at 134 (quoting *Guardian Trust Co. v. Bauereisen*, 132 Tex. 396, 121 S.W.2d 579, 583 (1938)).

7.      Parties must not pick and choose contract language, or interpret contract provisions out of context, but this is precisely what the Insureds have done in their brief. They parse out the phrase "logically or causally connected" from the remainder of the language in the

Related Claims condition, add the modifying terms "acutely obvious," and declare that it is the appropriate standard for determining whether the Victory Lawsuit and the United Healthcare Lawsuit constitute the same **Claim**.  Despite the claim that their analysis "considers all the language in the Policies," the Insureds conveniently ignore most of the language in the Related Claims condition.  *See* Insureds' Brief in Support at p. 20.

**B.      The Insureds' Interpretation of the Related Claims Condition Is Unreasonable**

8.      The Insureds further contend that, even if Berkley's interpretation of the Related Claims condition is reasonable, they have also offered a reasonable interpretation so the language in the condition must be ambiguous.  *See* Insureds' Brief in Support at p. 21.  Parties may disagree on coverage, but a disagreement over interpretation does not render contractual provisions ambiguous.  *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).  If the contract is subject to "definite legal meaning or interpretation," it is not ambiguous and courts will construe its meaning as a matter of law.  *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

9.      Insurance policy terms are not ambiguous merely because they are undefined; they are given their ordinary meaning.  *Harken Explor. Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001); *see Gilbert Tex. Constr., L.P.*, 327 S.W.3d at 126. Ambiguity must be evident from the policy itself and cannot be created by parol evidence of intent.  *Fiess*, 202 S.W.3d at 746-48.  A contract is ambiguous only when the application of pertinent rules of interpretation to its terms "leaves it genuinely uncertain which one of two or more meanings is the proper meaning."  *RSUI Indem. Co.*, 466 S.W.3d at 119.  Thus, a contract is ambiguous only if, after applying the rules of construction, it remains "subject to two or more reasonable interpretations."  *Id.*

10.     Unlike other contracts, where ambiguity creates a fact question, insurance policies are analyzed with a presumption in favor of coverage.  *State Farm Fire & Cas. Co. v. Reed*, 873 S.W.2d 698, 701 (Tex. 1993).  But Texas courts apply this rule to construe a policy in favor of coverage only if the insured's interpretation is reasonable.  *Balandran v. Safeco Ins. co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998).  A particular policy interpretation will not be deemed "reasonable" simply because it is grammatically possible.  *Ranger Ins. Co. v. Bowie*, 574 S.W.2d 540, 542 (Tex. 1978); *see Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984); *Lyons v. State Farm Lloyds & Nat'l Cas. Co.*, 41 S.W.3d 201, 206 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).  The Insureds' interpretation cannot be reasonable because it does not consider all of the contract language.  *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 591 (Tex. 1996) (finding that Defendant's interpretation of the contract was not reasonable because it ignored some of the contract language).  The Insureds simply cherry-pick pieces of the language in the Related Claims condition they like and add to it.

11.     Contrary to the Insureds' self-created condition the Victory Lawsuit and the United Healthcare Lawsuit constitute the same **Claim** if the two lawsuits allege a series of similar acts or omissions that are logically or causally connected, meaning that they have a common fact, circumstance, situation, transaction, casualty, event or decision.

12.     The Insureds' contention that the two lawsuits cannot be the same **Claim** because they involve different plaintiffs and different time periods is without merit since the Related Claims condition language focuses solely on the alleged acts or omissions.  *See* Insureds' Brief in Support at p. 15.  The Insureds also contend that the two lawsuits cannot be the same **Claim** because they involve different defendants.  *Id.*  The identity of the defendants is not part of the Related Claims analysis either, although the defendants in the two lawsuits must be **Insureds**

since the insuring agreement only provides coverage for a **Claim** made against an **Insured**. Berkley App. at 39 and 91. It is undisputed that **Insureds** are defendants in the Victory Lawsuit and in the United Healthcare Lawsuit. Further, in its Brief, Berkley addressed that Next Health, a defendant in the United Healthcare Lawsuit, is the majority owner of those **Insureds** that are defendants in the Victory Lawsuit. *See* Berkley App. at 108 (Request for Admission No. 10). Additionally, Andrew Hillman and Semyon Narosov are officers and/or directors of Next Health (and thus also **Insureds**) and were alleged to be instrumental in setting up the kickback scheme at issue in the Victory Lawsuit. *See* Berkley App. at 108 (Request for Admission Nos. 11 and 12); Berkley's Brief in Support of Motion for Partial Summary Judgment at ¶¶ 36-37. Accordingly, the focus of the Court's analysis must be on whether the two lawsuits contain factual allegations of acts or omissions that have a common fact, circumstance, situation, transaction, casualty, event or decision.

C.     **The Insureds Ignore the Factual Allegations**

13.     Berkley provided the Court with three charts comparing the factual allegations in the Victory Lawsuit with the factual allegations in the United Healthcare Lawsuit. These charts reflect that both lawsuits contain allegations that the Insureds: were structured to mask the payment of kickbacks to healthcare providers; charged prices significantly in excess of the market price in order to accommodate the payment of kickbacks to healthcare providers; and have engaged in kickback schemes for many years as evidenced by other lawsuits and criminal indictments. Berkley also urges the Court, however, to review all of the petitions and complaints filed in the lawsuits as they contain significantly more factual allegations that support Berkley's position that the two lawsuits constitute the same **Claim**.

14.     The Insureds dismiss Berkley's detailed outline of these factual allegations as "a convenient encapsulation of the two lawsuits into a few words."  Insureds' Brief in Support at p. 19.  The Insureds, themselves, then go on to conveniently encapsulate the two lawsuits into a few words by telling the Court what the gravamen of the pleadings is in both the Victory Lawsuit and the United Healthcare Lawsuit.  Insureds' Brief in Support at pp. 16 and 18.

15.     The Insureds' interpretation of the allegations in the Victory Lawsuit is that the Victory Debtors were charged above-market prices for specific medical equipment and devices. Insureds' Brief in Support at p. 16.  It is accurate to state that the pleadings contain allegations that the Insureds overcharged for their medical equipment and devices, but the Insureds fail to acknowledge the factual allegations addressing the scheme behind the physicians' ordering of the Insureds' products at above-market prices.  As cited in Berkley's Brief, the Victory Lawsuit pleadings clearly allege that the physicians continued to order the Insureds' products at above-market prices because the Insureds paid kickbacks to those physicians.  *See* Berkley's Brief in Support of Motion for Partial Summary Judgment at ¶¶ 36-37.

16.     The Insureds' interpretation of the allegations in the United Healthcare Lawsuit is that the Insureds improperly submitted out-of-network claims to United Healthcare for unnecessary and/or unauthorized testing of urine and saliva samples.  Insureds' Brief in Support at p. 18.  Once again, the Insureds' interpretation of the pleadings fails to acknowledge the factual allegations addressing the scheme behind the medical providers' ordering of unnecessary tests and utilization of the Insureds' labs even though they charged above-market prices. Berkley's Brief cites to United Healthcare's allegations that, because the Insureds' charged significantly more than other labs, no rational economic actor would choose the Insureds' labs without perverse incentives like kickbacks.  *See* Berkley's Brief in Support of Motion for Partial

Summary Judgment at ¶¶ 36-37.  Berkley's Brief also cites to United Healthcare's allegations that the Insureds' payment of kickbacks explains why medical providers would agree to uniformly request blanket testing that has nothing to do with a particular patient's clinical indications.  *Id.*

17.     The Insureds' interpretation of the gravamen of the pleadings cannot be considered by the Court.  Instead, only the factual allegations must be considered when determining whether Berkley has a duty to defend the United Healthcare Lawsuit.  "When reviewing the pleadings, courts must focus on the factual allegations, not the asserted legal theories or conclusions."  *Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 564 (5th Cir. 2015) (citing *Ewing Constr. Co. v. Amerisure Ins. Co., Inc.*, 420 S.W.3d 30, 33 (Tex. 2014)); *see also Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012) ("[W]e only defer to a complaint's characterization of factual allegations, not legal theories or conclusions."); *Fed. Ins. Co. v. CMI Lloyds Ins. Co*., No. 3:06-CV-0103-B, 2007 WL 9717213, at *5 (N.D. Tex. Mar. 9, 2007) (stating that Texas courts do not look to conclusory assertions of a cause of action in determining a duty to defend but, rather, the facts giving rise to the alleged actionable conduct as stated within the eight corners of the complaint).

18.     In addition to their summarized interpretation of the pleadings, the Insureds also rely on the allegations in a Fourth Amended Counterclaim filed in the Victory Lawsuit to support their contention that the two lawsuits are not the same **Claim**.  *See* Insured's App. at 1-15.  The Fourth Amended Counterclaim was filed on March 24, 2017, four weeks after Berkley denied coverage for the United Healthcare Lawsuit and six weeks after Berkley denied coverage for the Victory Lawsuit.  *See* Berkley's Supplemental App. at pp. 576-590 and 591-601.  The Insureds never tendered the Fourth Amended Counterclaim to Berkley.  *Id.* at pp. 602-604.  The Fourth

Amended Counterclaim does not, in any way, alter the conclusion that the Victory Lawsuit and the United Healthcare Lawsuit contain factual allegations of acts or omissions that have a common fact, circumstance, situation, transaction, casualty, event or decision. Further, whether or not there is coverage for the United Healthcare Lawsuit cannot be determined on the basis of a pleading that was never tendered to Berkley. *L'Atrium on the Creek I, L.P. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 326 F. Supp. 2d 787, 792 (N.D. Tex. 2004) ("It is the insured's duty to notify the insurer of the suit against it when it receives service of process; it is not the insurer's duty to determine when or if the insured was served.").

### D. <u>Texas Law Supports Berkley's Position</u>

19.     Berkley's Brief contains detailed discussions of Texas cases in which the courts have applied wrongful acts or interrelated wrongful acts provisions, similar to those in the Related Claims condition, to preclude coverage for a lawsuit that is related to a prior lawsuit that was filed before the policy's inception. Accordingly, Berkley will not repeat that discussion here, but will address the Insureds' characterization of some of those cases. Berkley will also address additional cases analyzing "related wrongful acts" or "related claims."

20.     With respect to *Southwest Risk, L.P. v. Ironshore Specialty Insurance Co.*, 188 F. Supp. 3d 621 (S.D. Tex. 2016), the Insureds state that whether the two lawsuits alleged "related wrongful acts" was not at issue. However, the Court specifically found that the two lawsuits "clearly arose from 'related wrongful acts' implicating a common factual nucleus, Southwest's misrepresentation of the AMREAC coverage program." *Id.* at 626-27. Similarly, the Victory Lawsuit and the United Healthcare Lawsuit should be found to allege **Related Wrongful Acts** because they arise from a common fact, circumstance, situation, transaction, casualty, event or decision, namely, the Insureds' operation of a scheme in which they charge prices significantly

in excess of the market price in order to accommodate the payment of kickbacks to those healthcare providers that order their products or utilize their labs.

21.     In *Adi WorldLink, LLC v. RSUI Indemnity Co.*, No. 4:16-CV-665, 2017 WL 4112112 (E.D. Tex. Sept. 18, 2017), claims filed a year apart were deemed to be the same claim because they arose out of a common fact, the insured's categorization of IMP engineers as exempt employees.   Berkley cites to *Adi WorldLink* because, once again a Texas court found separate claims that arose out of a common fact to constitute the same claim.   As discussed above, the Policies here deem claims to be the same **Claim** when they arise out of any common fact, as well as any common circumstance, situation, transaction, casualty, event or decision. Berkley App. at 34 and 86.   Berkley also cites to *Adi WorldLink* based on the court's determination that the policy language requires that coverage is determined under the policy in effect when the earlier claim was first filed against the insured.  *Id.* at *6.  The Policies at issue here contain the same language considered by the court in *Adi WorldLink*, therefore coverage for the Victory Lawsuit and the United Healthcare Lawsuit is determined under the Prior Policy. Berkley App. at 36, 68, and 88.   Because the **Claim** was not timely reported under the Prior Policy, there is no coverage for the United Healthcare Lawsuit.

22.     In their Brief, the Insureds discuss the case of *TRI Core Inc. v. Northland Insurance Co.*, No. 3-01-CV-1431-BD, 2002 WL 31548754 (N.D. Tex. Nov. 12, 2002).  As noted by the Insureds, Magistrate Judge Kaplan concludes that there is no coverage for a lawsuit filed during the policy period because it is related to two other lawsuits filed prior to the policy period.  The policy at issue defines "related claim" as "all claims involving the same wrongful act or wrongful acts which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, event or decision."  *Id.* at *4.  This definition is significant

because it is substantially similar to the definition of **Related Wrongful Acts** in the Policies. However, the Policies include the additional language of "one or more series of any similar, repeated or continuous…**Related Wrongful Acts**" in defining Related Claims.  Berkley App. at 36, 68, and 88.

       23.     Magistrate Judge Kaplan focuses on the acts or omissions that lead to the plaintiffs' damages, and finds that all three lawsuits contain allegations similar to the following:

> Plaintiffs are New Jersey companies and their principals who bring this action to recover losses based upon false and misleading representations that induced plaintiffs to enter into agreements with defendants to set up and administer supposedly tax qualified and otherwise appropriate retirement plans. Those retirement plans were challenged by the Internal Revenue Service as unlawful and have been disqualified, resulting in the loss of significant benefits to plaintiffs and severe, adverse tax consequences.

*TRI Core Inc.*, 2002 WL 31548754 at *5.  He therefore concludes that the three lawsuits are "related claims."  *Id*.  Notably, TRI Core argued that the lawsuits could not be "related claims" because the lawsuit filed during the policy period involved eight parties that were not involved in the prior lawsuits.  *Id*.  The Insureds make the same argument in their Brief.  Insureds' Brief in Support at p. 15.  Magistrate Judge Kaplan dismisses this argument, stating that "the distinction between 'prior plaintiffs' and 'new parties' is not found anywhere in the policy….[s]tated differently, it is the nature of the claim, not the identity of the claimant, that controls." *Id*.

       24.     The Insureds cite to the case of *Admiral Insurance Co. v. Briggs*, 264 F. Supp. 2d 460 (N.D. Tex. 2003) as support for their position that the Victory Lawsuit and the United Healthcare Lawsuit should not be deemed the same **Claim** under the Related Claims condition. The case is not instructive, however, because it is devoid of any discussion of the factual allegations in the three lawsuits at issue and the court simply held that the summary judgment evidence failed to establish that the lawsuits arose out of "related wrongful acts."

25.      In a later case, *Great American Insurance Co. v. Godwin Pappas Ronquillo,*

*L.L.P.*, No. 3:07-CV-1727-N, 2009 WL 10678616, at *4 (N.D. Tex. Jan. 12, 2009), Judge

Godbey distinguishes *Briggs* in stating that those lawsuits were securities fraud claims involving

different representations to different people at different times.[4]   In *Godwin Pappas*, Judge

Godbey considers whether a malpractice lawsuit and a sanctions motion are "related claims"

under a Great American policy.  The facts are as follows.  Godwin Pappas represented Renato in

a patent infringement suit against Wood Stone.  In 2005, Wood Stone filed a sanctions motion

against Godwin Pappas alleging it failed to conduct pre-suit investigation of Renato's claims

against Wood Stone, failed to plead fraud with particularity, failed to provide evidence to support

claims against Wood Stone, failed to comply with discovery, and submitted contradictory

materials under oath.  In 2006, Renato's bankruptcy trustee filed a malpractice lawsuit against

Godwin Pappas.  The malpractice lawsuit generally alleged that Godwin Pappas's substandard

representation of Renato in the patent lawsuit caused Renato to lose the patent lawsuit.  Great

America accepted coverage for the sanctions motion, which was within its policy period.  It

initially denied coverage for the malpractice lawsuit, as it was first filed after its policy period,

but later accepted coverage subject to a reservation of rights.

26.      If the claims were related, then the malpractice lawsuit would be covered under

Great American's policy period.  The policy defined "related claims" as "[t]wo or more Claims

arising out of the same or related act, error or omission...."  *Great Am. Ins. Co.*, 2009 WL

10678616 at *4.  Great American argued that the claims in the case were not related because the

two actions involved different parties and theories of liability.  *Id.*  Judge Godbey disagreed,

---

[4]   *Briggs* and another case cited by the Insureds, *American Automobile Insurance Co. v. Grimes*, No.
CIV.A.5:02-CV-066-C, 2004 WL 246989 (N.D. Tex. Feb. 10, 2004), are distinguishable in that the plaintiffs in
those underlying lawsuits alleged damages resulting from misrepresentations by the insureds.  The
misrepresentations made to each plaintiff were different.  In contrast, the plaintiffs in the Victory Lawsuit and the
United Healthcare Lawsuit allege damages resulting from the same kickback scheme utilized by the Insureds.

stating that "while the two claims are separate and distinct, the allegations in the malpractice action and the sanctions motion arise from the same factual circumstances and legal representation Godwin Pappas provided to Renato in the Patent Suit." *Id.* Accordingly, under Judge Godbey's analysis, claims are related when they allege acts or omissions that arise out of common factual circumstances. The parties and the legal theories are not at all determinative.

E.     **The Lawsuits are the Same Claim**

27.     Pursuant to the Policies' language, the Victory Lawsuit and the United Healthcare Lawsuit allege **Related Wrongful Acts** if they contain allegations of acts or omissions that have any common fact, circumstance, situation, transaction, casualty, event or decision. Berkley App. at 34 and 86. A review of the factual allegations in the lawsuits reveals that both sets of plaintiffs allege damages as a result of kickback schemes engaged in by the **Insureds**. Further, the nature of the kickback schemes alleged in both lawsuits is identical. The **Insureds** create subsidiaries and then encourage medical providers to purchase fractional ownership interests in those subsidiaries. *See* Berkley's Brief at ¶ 36. The medical providers receive kickbacks in the form of distributions on their ownership interest, thereby masking the true nature of the payments. *Id.* The lawsuits allege that the **Insureds** can afford to pay kickbacks because they charge significantly more than other laboratories and medical equipment vendors for the same services and equipment. *Id.* at ¶ 37. It is also significant that both lawsuits allege that **Insureds** Hillman and Narosov were active participants in the creation of the Next Health subsidiaries and the marketing of the scheme to medical providers as a way "to comply with anti-kickback statutes and other regulations or laws limiting a physician's ability to own companies that provide medical goods and services to hospitals and doctors." *Id.* at ¶¶ 36 and 38; Berkley's App. at 198, ¶ 119. Accordingly, the Victory Lawsuit and the United Healthcare Lawsuit allege

**Related Wrongful Acts** because they both seek damages resulting from identically structured kickback schemes developed and utilized by the **Insureds**.

28.     The Policies' Related Claims condition dictates that the Victory Lawsuit and the United Healthcare Lawsuit be deemed the same **Claim** because they allege **Related Wrongful Acts** or one or more series of any similar, repeated or continuous **Related Wrongful Acts**.  As that **Claim** was first made on September 25, 2015 and, as admitted by the Insureds, not timely report in accordance with the Prior Policy's Notice of Claim condition, Berkley is entitled to a declaration that there is no coverage for the United Healthcare Lawsuit under either the Prior Policy or the Policy.

## IV.     <u>CONCLUSION</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiff Berkley Insurance Company respectfully requests that the Court grant its Motion for Partial Summary Judgment, deny Defendants' Motion for Partial Summary Judgment, and award other and further relief, both legal and equitable, to which Berkley may be justly entitled.

Respectfully Submitted,

*/s/ Lisa M. Henderson*_____
Lisa M. Henderson
State Bar No. 24025423
lisa.henderson@clydeco.us
L. Kimberly Steele
State Bar No. 04127600
kimberly.steele@clydeco.us
CLYDE & CO US LLP
10440 N. Central Expressway, Suite 800
Dallas, TX  75231
Telephone:     (214) 540-7539
Facsimile:      (214) 540-7540

Howard L. Close
State Bar No. 04406500
close@wrightclosebarger.com
Randall C. Owens
State Bar No. 15380700
owens@wrightclosebarger.com
J. Andrew Love
State Bar No. 24007571
love@wrightclosebarger.com
Natasha N. Taylor
State Bar No. 24071117
taylor@wrightclosebarger.com
WRIGHT CLOSE & BARGER, LLP
One Riverway, Suite 2200
Houston, TX  77056
Telephone:     (713) 572-4321
Facsimile:     (713) 572-4320

**ATTORNEYS FOR PLAINTIFF/COUNTER-DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing instrument was served on all counsel of record via ECF electronic delivery on July 30, 2018.

*/s/ Lisa M. Henderson*
Lisa M. Henderson